## WILSON v. FRANK RIDLON CO. et al.

(Circuit Court, D. Massachusetts. October 25, 1909.)

No. 304.

PATENTS (§ 328*)—INVENTION—TENDER FOR TROLLEY ROPES.

The Wilson patent, No. 597,159, for an automatic tender for trolley operating ropes, makes but a single change in the device of patent No. 563,-531 to the same patentee, which consists in making a stop spring connection between the end of the coil spring which actuates the rope reel and the axle, instead of a permanent connection, which mode of connection was old for analogous purposes, and the patent is void for lack of invention.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*

In Equity. Suit by Charles F. Wilson against the Frank Ridlon Company and others for infringement of patent. On final hearing. Bill dismissed.

J. S. Rusk, for complainant.
Allen Webster, for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

COLT, Circuit Judge. This bill alleges infringement of the Wilson patent, No. 597,159, granted January 11, 1898, for an "improvement in automatic tenders for trolley-operating ropes."

The improvement covered by the claim in issue is for a slip connection between the inner end of the tension spring and the axle with which it is engaged. The main defense is want of patentable novelty. The patent says:

"My invention relates to an improvement in automatic tenders for trolley-operating ropes, with the object in view of simplifying and rendering more reliable the device for which United States letters patent No. 563,531 were granted to me on the 7th day of July, 1896. * * *

"To obviate any liability of breaking or disarranging the reel-actuating spring, G—as, for example, by winding it in the reverse direction from that in which it should be wound—I attach it to the axle, b³, in the following manner: In the axle, b³, there is formed a V-shaped notch, b⁴ (see Fig. 4), and the inner end of the spring, G, is provided with a hook, g², which, when the spring, G, is wound in the proper direction, catches in the notch, b⁴, as shown in Fig. 4, and holds the end of the spring against slipping around the axle; but, if the spring should be unintentionally or intentionally wound in the opposite direction, the hook, g², would free itself from the notch, b⁴, and slip around the axle, and thereby relieve the strain and prevent the spring from breaking."

The claim in issue is as follows:

"2. The trolley-tender, comprising a reel for receiving the trolley-arm operating rope, means for regulating the rotary movement of the reel and a coil-spring for actuating the reel, the said spring having one of its ends fixed to the hub of the reel and its opposite end engaged with the axle from which the reel rotates, the connection between the spring and the axle being such that the end will be held fast when the spring is drawn in one direction and set free when the spring is drawn in the opposite direction, substantially as set forth."

All the elements in this claim are found in the prior Wilson patent, No. 563,531, except the last, which relates to the connection between the inner end of the tension spring and the axle.

In Wilson's prior patent the inner end of the tension spring was permanently attached to the axle. In the patent in suit all Wilson did was to bend over the inner end of the tension spring in the form of a hook and cut a notch in the axle, whereby the spring is held fast when drawn in one direction, and slips around the axle when drawn in the other direction.

The patentable novelty of claim 2 rests solely upon this difference of connection between the tension spring and the axle.

To connect a spring with a shaft, by bending over the end of the spring and making a notch in the shaft, or by other similar means, so that the spring will be held if pulled in one direction, and will slip around the shaft if pulled in the other direction, was so common and well known in the arts at the date of the Wilson patent that I am unable to find any invention in making such a connection in the tension spring of a trolley catcher.

A slip-spring connection almost identical in form with that described in the Wilson patent in suit is shown in the Maynard patent of 1875 relating to mainsprings for watches.

Another similar slip-spring connection is found in the Rieder patent

of 1880 relating to velocipedes. The specification of the Rieder patent says:

"Upon the center of the axle is formed a projection or catch, 5, as shown in Figs. 1 and 2, and around this part of the axle is placed the coil spring, I., which spring is placed within the drum, G. The outer end of this spring is secured to the drum, while the inner end of the spring is provided with a suitable projection, 6, to engage with the catch on the axle when the drum is moved in one direction: but when the drum is moved in the other direction this projection slips idly past the catch, 5, on the axle."

Another similar slip-spring connection is exhibited in the Bradford patent of 1888 for a fishing reel. The specification of the Bradford patent says:

"The described engagement of the inner end of the spring with the shaft by the interlocking of the hook, K$^1$, of the spring with the slot or pocket, j, in the shaft, permits the automatic disengagement of the spring from the shaft in case the shaft is rotated backwardly."

Among the other patents in the record showing slip-spring connections are Paillard, 1882, musical box; Karrer, 1881, musical box; Shiver, 1878, spring motor; Weeden, 1881, mainspring collet for watches.

The fundamental purpose of these slip-spring connections is the same as that set forth in claim 2 of the Wilson patent, namely, to so connect the spring with the axle "that the end will be held fast when the spring is drawn in one direction and set free when the spring is drawn in the opposite direction," thus protecting the spring against undue strain, disarrangement, and liability to break.

Mr. Livermore, complainant's expert, admits that the only novel feature in claim 2 over the prior Wilson patent is the connection between the tension spring and the axle:

"The construction forming the subject of claim 2 of the Wilson patent sued upon differs from the construction shown in Wilson's prior patent, No. 563,531, in the element or feature of construction involved in the connection of the reel-actuating spring with the axle upon which the reel rotates."

Mr. Livermore also admits that this slip-spring connection was old in the arts, and that, if Wilson had framed a separate claim for this feature, it would have been anticipated:

"I consider it unnecessary to discuss each of the several prior art structures in detail, as I do not regard those prior art structures which contain a one-way slipping connection between the spring and axle as differing substantially in the construction of said connection from that element or component of the trolley-catcher of the Wilson patent sued upon, which consists in the connection between the spring and axle such that the end of the spring will be held fast when the spring is drawn in one direction and set free when the spring is drawn in the opposite direction."

And, further, he says:

"If the Wilson patent had in fact contained a claim directed to this feature merely as a spring connection for a coiled spring in a mechanical contrivance of any kind, I should regard the subject-matter of such supposed claim as being anticipated by the construction shown in the Maynard patent as an example of all the prior art structures in evidence in this case, other than the trolley-catcher forming the subject of Wilson's prior patent, No. 563,531."

It is contended, however, that there is patentable novelty in the combination covered by the claim in issue. The answer to this contention is that all the elements except the slip-spring connection, enumerated in claim 2, co-operating in the same way, were old in the prior Wilson patent; that Wilson simply added to these old elements a slip connection; and that the construction of the slip connection, its mode of operation, and the result it accomplishes, as set forth in the patent, are substantially the same as the old and well-known slip connections of the prior art.

For these reasons claim 2 must be held invalid for want of invention.

A decree may be entered dismissing the bill, with costs.